UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS W. STOCKWELL and
INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 324,

       Plaintiffs,                                         Civil Case No. 15-11609
                                                                         Honorable Linda V. Parker

v.

JOHN M. HAMILTON and
WILLIAM ROUGH,

       Defendants.

and

JOHN M. HAMILTON,

       Plaintiff,                                           Civil Case No. 19-11566
                                                                     Honorable Linda V. Parker

v.

OPERATING ENGINEERS' LOCAL
PENSION FUND and BOARD OF
TRUSTEES OF THE OPERATING ENGINEERS'
LOCAL 324 PENSION FUND,

       Defendants.
_____/

**OPINION AND ORDER GRANTING
MOTION TO APPROVE SETTLEMENT**

In 2015, Douglas Stockwell and the International Union of Operating

Engineers Local 324 ("Local 324") initiated a lawsuit against John M. Hamilton

and William Rough, seeking reimbursement of the legal fees the Operating Engineers' Local 324 Pension Fund ("Fund") advanced to defend Mr. Hamilton and other Fund trustees in connection with certain federal investigations. In 2019, Mr. Hamilton sued Local 324 and the Fund's Board, seeking a declaration that the Fund is obligated to advance attorneys' fees to him pursuant to an agreement between himself, the Fund, and the Fund's Board. The heart of the disputes arise under the Employment Retirement Income Security Act (ERISA), 29 USC Section 1001 et seq. After contentious litigation, spanning almost five years, and over twenty-two (22) months of negotiations before the Honorable Nancy G. Edmunds and David R. Grand, the parties agreed to settle these lawsuits and two related matters.[1] (*See* ECF No. 216-1.) The matter is presently before the Court on a motion for approval of the Settlement Agreement. (ECF No. 216.)

Under the Settlement Agreement, the Fund will recover approximately $1.6 million in exchange for *inter alia* mutual releases barring future claims by Fund participants and beneficiaries and Local 324 members against Mr. Hamilton or Mr. Rough. To effectuate this bar, Local 324 and the Fund served notice of the agreement on 22,741 Fund participants and beneficiaries and Local 324 members and offered them the opportunity to assert written objections to the agreement.

---

[1] Those matters are: *Trustees of the Operating Engineers' Local 324 Pension Fund v. Federal Insurance Company*, AAA no. 01-18-0000-9316 and *United States v. Hamilton*, No. 19-mc-51805 (E.D. Mich. filed Dec. 13, 2019).

2

One objection was received from Fund participant and Local 324 member James Arini. On April 21, 2020, the Court conducted a telephonic motion at which counsel for the parties and Mr. Arini addressed the Court.

Courts in the Sixth Circuit approve settlement agreements when they represent a prudent, fair, and reasonable resolution for all interested parties and non-parties. *Int'l Union v. Ford Motor Co.*, No. 05-cv-74730, 2006 WL 1984363, at *21 (E.D. Mich. July 13, 2006), aff'd sub nom. *Int'l Union v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007). While the present matters are not class actions under Rule 23 of the Federal Rules of Civil Procedure, the Court finds the guidance for evaluating settlement agreements in such matters to be a useful guide here. As one judge in this District has observed:

> "In assessing the settlement, the Court must determine 'whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.'" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) (quoting *Fisher Bros. v. Cambridge-Lee Indus.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985). An appropriate range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Under this standard, "[a] just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig. (II)*, 659 F.2d 1322, 1325 (5th Cir. 1981).

*Ford Motor Co.*, 2006 WL 1984363, at *21. Courts in the Sixth Circuit find eight factors relevant in considering whether a class action settlement is fair, adequate, and reasonable:

> "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d at 631). "The district court enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992); see also *Ford Motor Co.*, 2006 WL 891151, at *14 ("The court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.").

Here, the Settlement Agreement is the byproduct of serious, informed, and non-collusive negotiations between the parties. Beginning in May 2018, the parties engaged in multiple months of settlement negotiations overseen by two respected judicial officers in this District. Counsel met with Magistrate Judge Grand and/or Judge Edmunds for at least seven formal settlement conferences, and met independently outside those conferences, to forge the present agreement.

4

The Settlement Agreement does not favor any one party but represents a compromise among them all. The amount the Fund will recover under the Settlement Agreement reflects forty percent (40%) of what it hoped to recover if the 2015 matter proceeded to trial. This is substantial, particularly when considering the significant attorneys' fees that would have been expended if a trial was necessary. Moreover, despite the fact that the 2015 litigation is approaching its fifth anniversary, the parties had significant additional discovery to complete and additional motions to file, which would have further reduced any recovery at trial and possibly required further litigation funding by Local 324.

There also is uncertainty as to whether Local 324 or the Fund would prevail at trial. Moreover, a judgment could result in additional lengthy disputes regarding enforceability, collectability, and insurance coverage. If Mr. Hamilton prevailed, he, and possibly the insurance carriers, could seek reimbursement of defense costs under the indemnification agreements with Local 324 and the Fund.

Mr. Arini raises several objections to the Settlement Agreement. He contends that the amount to be recouped by the Fund is insufficient, that Local 324 should receive reimbursement for the $820,000 it contributed to fund the 2015 litigation, and that Local 324 lacked the authority to release its members' rights to sue Mr. Hamilton and Mr. Rough. Mr. Arini further argues that by releasing members' rights, the Settlement Agreement violates the Labor Management

Reporting and Disclosure Act of 1959 ("Landrum-Griffin Act"), 29 U.S.C. §§ 401-531. The Court appreciates Mr. Arini's objections. Nevertheless, they do not convince the Court that it should refrain from approving the Settlement Agreement.

As one of the attorneys pointed out at the motion hearing, the sign of a good compromise is that neither side is fully satisfied. Undoubtedly it would be optimal for the Fund and its participant and beneficiaries if all of the costs that had been advanced to Mr. Hamilton and others were recovered. However, there was no guarantee that this would be the result if the Fund and Local 324 pursued this litigation to trial. Moreover, pursing this optimal relief would come at significant expense and risk.

A percentage of the Local 324 membership may not be pension fund participants. Nevertheless, Local 324 had the authority to decide that this litigation was appropriate and in the best interests of its members and to forgo reimbursement of the amount it paid to support the litigation.

Contrary to Mr. Arini's assertions, Local 324 had the authority to bind its members to the Settlement Agreement provided the release of their statutorily protected rights is "clear and unmistakable" and the union did not act in bad faith or arbitrarily. *See Dotson v. Arkema, Inc.*, 397 F. App'x 191, 194 (6th Cir. 2010); *Int'l Longshore & Warehouse Union v. Columbia Grain, Inc.*, 714 F. App'x 660,

6

662 (9th Cir. 2017) (citing *Vaca v. Sipes*, 386 U.S. 171, 177, 190-91; *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967)). Mr. Arini does not claim that the release is unclear or ambiguous and the Court finds no indication that Local 324 is acting in bad faith or arbitrarily. Moreover, Mr. Arini's claims, if any, would be barred by ERISA's six-year statute of repose as Mr. Hamilton's role as a fiduciary with respect to Local 324 and the Fund ended more than seven years ago. *See Durand v. Hanover Ins. Grp. Inc.*, 806 F.3d 367, 376 (6th Cir. 2015) (citing 29 U.S.C. § 1113 and explaining that "ERISA specifies a three- or six-year limitations period for claims of breach of fiduciary duty.").

Because Mr. Arini's potential claims are time-barred, the Court does not believe the Settlement Agreement violates his rights under the Landrum-Griffin Act (hereafter also "Act"). In other words, the Landrum-Griffin Act does not protect a union member's right to bring an untimely claim. Moreover, the Court concludes that the Act does not apply to the claims waived in the agreement.

" 'The LMRDA was the product of congressional concern with widespread abuses of power by union leadership.' " *Babler v. Futhey*, 618 F.3d 514, 520 (6th Cir. 2010) (quoting *Sheet Metal Workers' Int'l Assoc. v. Lynn*, 488 U.S. 347, 352 (1989)) (internal quotation marks omitted). The Act contains a "Bill of Rights" for union members " 'designed to guarantee every union member equal voting rights, rights of free speech and assembly, and a right to sue.' " *Id.* (quoting *United*

7

*Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 109 (1982)). "In providing these protections, 'Congress sought to further the basic objective of the LMRDA: ensuring that unions are democratically governed and responsive to the will of their memberships.' " *Id.* (quoting *Lynn*, 488 U.S. at 352) (additional quotation marks, citation, and brackets omitted). The Supreme Court has held that union members cannot establish a violation of the statute where their claims are "inconsistent with the LMRDA's 'overriding objective' of democratic union governance." *Lynn*, 488 U.S. at 353 (quoting *Finnegan*, 456 U.S. at 441). The disputes here pertain to the ERISA rights of pension fund participants to sue for, or settle, breach of fiduciary claims thereunder. The claims waived by union members in the Settlement Agreement have nothing to do with democratic union governance.

For these reasons, the objections Mr. Arini raises do not impact this Court's conclusion that the Settlement Agreement is prudent, fair, and reasonable.

Accordingly,

**IT IS ORDERED** that the motion for approval of the Settlement Agreement is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall submit a proposed

Judgment within fourteen (14) days of this Opinion and Order.

**IT IS SO ORDERED**.

s/ Linda V. Parker<br>LINDA V. PARKER<br>U.S. DISTRICT JUDGE

Dated: May 11, 2020